All right, next case we'll hear is United States v. Jackson and Mr. Wagner, when you're ready. This is the garbage case. The trash pull case. Excuse me, yes, trash pull. Good morning, and may it please the court. I'm Rob Wagner with the Federal Public Defender's Office here in Richmond, and I represent Mr. Jackson in this case. Judge Niemeyer was not speaking generically. I hope not. I was baiting you. Well, and I will respond accordingly. The search of the trash container that was 20 feet from Mr. Jackson's rear door, right next to his rear patio in Whitcomb Court, should receive no less protection under the Fourth Amendment than a trash can adjoining a rear deck or rear patio in a gated community. This trash can was not left for collection. It was in a no trespassing area and under But this report made a specific finding, actual finding, that it was outside of the cartilage and went through the factors from U.S. v. Dunn, and it would seem like that's a fairly high barrier to the extent that being in or out of the cartilage is a factor in the final decision. But that would seem to be a fairly high barrier to overcome on appeal. We would disagree with the findings of the district court. As the record reflects, the trash can was directly next to the patio based on the district court's findings. Obviously, the evidence we presented tried to show that it was actually on the patio. But given the district court's findings, if you look to the Jardines case and how the Jardines case treated cartilage, twice in that opinion, the court talked about a garden being part of the cartilage. Justice Scalia, in his opinion, said that the Fourth Amendment would be of little practical value if the state's agents could stand in a home's porch or side garden and trawl for evidence with impunity. But in that case, the dog was trawling for evidence at the front door. On the front porch, that's correct, Judge. Which was not part of the common area of whatever. It was private property. And we would suggest that the grassy area that abutted the patio in this case was Mr. Jackson's side garden. This is sort of important in this case, but I thought the court found that the concrete patios adjacent to each unit was part of that unit, and therefore to find the cartilage at that point. The grassy area and the sidewalks that were common to the grounds there was common ground, owned by the city of Richmond. And that, I think, was important to the judge. Your client testified, or actually the leasehold owner testified that she kept the trash can locked up on the pole there. Very close to the rear door. Right, rear door. Yes, sir. And her suggestion was, but she acknowledged that, number one, on trash days, she unlocked it. To wheel it around. Right, right. To the front of the room. And she acknowledged that when she put trash in, that that was intended to be gone. Somebody then used the word, well, you abandoned it, and the objection sustained. So, if you take the factual findings, you would conclude that the trash can was locked up next to the back door on the pole. Except on trash days. And then, somehow, it was unlocked. She said they unlocked it, and it must have been a two-stage process. We didn't understand it because there's no full evidence. It was moved out to the sidewalk. And the question, then, is moved out to the sidewalk probably for easy rolling down the sidewalk to the street. Unless the garbage collectors did the rolling. In our neighborhood, that's what they do. They'll go into the driveways, and they'll pull it out to the street for the trucks. And it's not clear on this record what the two stages are. But it clearly seems to me the record and the findings of fact support the notion that it was locked up next to the back door and rolled out to the sidewalk for trash collection. And the officer testified that's where it was when he pulled it back. Well, I don't believe there was any testimony from the defense witnesses that the trash can ever was taken to the sidewalk and left at the sidewalk. You have to infer that if you accept your client's testimony, it was locked up on a regular basis next to the back door to the pole right there. And she said, so we don't lose it. And I have some suggestion you put bicycles that way, too. You put them next to the pole. And she then acknowledged that on trash days, the can was unlocked. And the officers testified this was a trash day. They knew the trash day was Thursday. And when they saw the can, it was unlocked, as she would have said, and it was out on the sidewalk. And so how it got from the back door to the sidewalk is no testimony. That's correct. But at 4 o'clock in the morning on Thursday, before the trash comes around, they saw it on the sidewalk. And that was credited. So now if we accept that and her testimony that what was put in the trash can is intended to be trash and not retrieved, then government gets pretty far along. I don't believe so, Judge. Because of the Supreme Court's treatment of curtilage under Jardines, again, twice in that decision, a garden was referenced as part of the curtilage. It was a public area. But I submit it's not, Judge. It was a city of Richmond area, and it could not be claimed by her as her property. It could not become part of the leasehold. Well, I think if you look at the configuration of the rear of that residence, Judge, you had the patio there. You had a very small, grassy area. Well, that grassy area is part of the common area. It's between the patio and the sidewalk. Patio and the walkway. And it's not really a sidewalk, as we know, going along a roadway. It's a walkway that goes behind the residence there. Yeah, but it goes the full length for the common use. It's maybe 30 or 40 feet past Ms. Cox's residence there, past the residence of Mr. Jackson. But every patio is connected to that sidewalk, and the sidewalk is where it clearly the intent is for the sidewalk to serve the common area. And another question here is to what extent was that area exposed to the public? The Supreme Court in California v. Greenwood made it very clear that a search is legitimate when a defendant has deposited garbage in an area particularly suitable. Well, hold on. This is a Richmond property, and this is a Richmond police officer. Well, and my home may be owned by a bank, Judge, but it's still my property where the patio is, that rear patio is. And if there's an area, for instance, in my front yard, if there's a sidewalk in front of my yard there, the area that's closest to my home that adjoins that sidewalk, that's my property. It depends whether it's your sidewalk. In front of my house, the sidewalk belongs to the city of Baltimore. And so my sidewalk connects to the city sidewalk. And if I had rolled this out to the sidewalk, I would say that that's common area. Were the trash collectors permitted to go back to that area to collect the trash? No, Your Honor. No. And that's one of the principal points here. It was not left for collection back there. But you said, were they allowed? There's no evidence that they weren't allowed there. I don't think there was any testimony to suggest that any trash collectors ever went back there. There was testimony that everybody went through there, that it was basically a walk-through area. It had no trespassing sign, but, you know, coming from right across the street from the courthouse on that plaza, it says no trespassing. And, of course, the whole public goes through there. All of the witnesses were consistent that the trash cans needed to be wheeled through that sidewalk 50 yards to the front where the trash collectors would pick up that trash. What difference does that really make? It's a difference in access to the public. It's a difference in privacy. It's a difference in protection. And also when you couple that with a no trespassing sign. Why would you say that that be the case, though? Because the Supreme Court has never said in terms of describing some quantum of people that have access to it. The point was whether or not, well, was their access in fact. And they've used that phrase about accessible to animals, children, snoops, scavengers, and members of the public. Well, certainly where this garbage can was, was accessible to animals, children, scavengers, snoops, and other members of the public, whether they were trespassers or not. But any person who lived in that apartment complex, their guests, invitees, employees of the city of Richmond, anybody that walked down that sidewalk had access to that garbage can. And there may have been members of the public otherwise who shouldn't have been there, but if they were, they had access to that garbage can. Judge, there isn't a single case I found in which the court confronted a garbage can not left for collection. That's the distinction in this case. It's unclear to me whether the garbage people come and come back there and roll it out to the street or whether the tenant rolls it out to the street. That's not said in the record. It's always in the passive. But it's a two-stage process. The one stage is to get it from the back door out to the sidewalk, and they were all lined on the sidewalk there. Judge, I don't believe there was any – The officer said they go by there regularly on the sidewalk, and – I don't believe there was any testimony about a two-stage process, nor was there any – Oh, no, you have to imply it, because she clearly indicated that it's unlocked, and the officer saw it in an unlocked state off the – on the sidewalk. Or it's a credibility question, Judge, whether the – No, it wouldn't be a finding. The resident of the property was being truthful that that – and both of her neighbors, that that trash can was consistently locked to the pole, or that the officers were incorrect or not credible in saying that it was closer to the sidewalk. Well, we can take that now as an issue. If you want to say the court didn't have substantial evidence to make it a finding – No, I'm – my position – We have to start with found facts. Sure. Unless we're challenging the facts. So the found fact is that it was on the sidewalk there, off the – outside the curb. Yes, sir. The testimony of the tenant says when it's not garbage day – and this was not disputed – when it's not garbage day, it's locked up on the pole next to the back door. Correct. On the – And on garbage day, it's taken around to the front, to the curb, on the street, where it is left for collection. Well, that's in the past. That's where it says it is taken to the street. But the officers found it on the sidewalk, along with others on the sidewalk. I believe the findings of the district court were that the trash can was found adjacent to the sidewalk. That's a very important finding in this case. Found it outside the curtilage. Well, and they did find it outside the curtilage. But curtilage is a question of law for this court to resolve de novo. And when you look at the Jardines case, when you look at what the purposes of this area is for – This is Richmond property. This is – back there is common Richmond property in which officers can come, tenants can come, there are invitees. The place that is exclusive, that should give for expectations of privacy, was defined by that patio. And it seems to me if you just take it a little further, you go out to the middle of the yard, there's a jungle gym, and you take your garbage can out there and say everybody can take whatever they want out of there. It's good for the animals. There's a sense of abandonment. But this place where the garbage can was was literally two, three feet from the laundry pole on that rear patio. It goes beyond the patio. I mean, you either have to – you know, we have to draw lines. This is not the Jardines case because this is not where you have private property where part of the private property is curtilage and part of the private property is not. You know, these houses that have these acreages and the officers go into the woods and find the marijuana patches, that's the common stuff we get out of – mostly out of West Virginia. And these, you have to define the curtilage. And the curtilage is the area more immediately around the house. But all that property is owned by the owner of the house. Here, this is a public property where the tenant leases a portion from the city and which the district court said includes a patio. In defense of Judge Thacker, though, not all the open fields cases do come from West Virginia. I just happen to remember a couple from the woods in West Virginia. I do think there are other woods in our fourth circuit. But the analysis of the district court, though, was flawed in a very important respect. The focus of the district court was on the placement of the trash can. Jardines makes it clear it's where the police officers were searching that's most important. And there were no specific findings by the district court as to where the police officers were when the search was conducted. In other words, the district court should have determined under property law analysis, which we find from Jones and Jardines. Your Honor? Do you think that we could conclude that the search of the trash can occurred on the patio? Absolutely. Based on these factual findings? And on common sense. These are super cans, Judge. I saw pictures, but my point is if they're out there off the patio on the sidewalk area or half on the grass, shouldn't we conclude from the factual findings that that's where the fall occurred? No. Again, there's no specific findings. There was testimony by the officers that they were on the grassy area. The district court at Joint Appendix 172 found that they were on the side or that, I'm sorry, didn't find, stated that the officers testified that they were on the sidewalk, but made no specific findings as to where the officers were. With a super can, you have to stand essentially in front of the can to open the can up. It is particularly suited not for public inspection, not for scavengers to go in, not for children. Are you sure that the officers, based on nothing in the record, pulled the can back up onto the patio to search it? No. I'm suggesting they went onto the patio and they searched the trash can. Based on what? Based on the testimony of all of the defense witnesses in the case who stated that that trash can was locked to the rear laundry room. You're just directly contradicting what the court found. But I'm responding to the question of the court. Yeah, but you can't make that conclusion unless we change the facts. And to do that, we have to find the court clearly erroneous, right? That's exactly right. Is that the standard you want us to, you want to say the court had no basis of finding what it found? No, I'm suggesting that based on the findings of the district court, we prevail in this case. We prevail because this was on the curtilage. This was akin to a side garden or a garden that the Jardines court found was protected property under the Fourth Amendment. Therefore, this decision should be reversed by this court. Okay. Thank you. We'll hear from your colleague, Mr. Siebert. May it please the court, my name is Eric Siebert. I'm an assistant United States attorney here in Richmond, Virginia. I represent the United States of America. Your Honor, the test for a trash pull violating the Fourth Amendment as set forth in Greenwood is very clear. It's that a defendant's subjective expectation of privacy does not give rise to Fourth Amendment protection unless society is prepared to accept that as objectively reasonable. Although this is a test, many circuits throughout the country have different interpretations and there's different circumstances that go to those tests. They could go from being off the curtilage to being publicly accessible to being left for collection or abandoned or a physical trespass or a communal bin in an apartment context. But under all those circumstances, the United States would win in this case. There's never been Fourth Amendment protection. How is it left for collection? Well, Your Honor, there's no case law that says it has to be left for collection for a garbage man. There's only that it has to be left for collection for anyone. If it's left in the back and accessible to the public, it would be left for collection. But if you listen to Sierra Cox, the owner of the residence and the owner of that trash can, she said she discarded and was relinquishing those items in that trash can despite being in the rear of her home. So I think left for collection is being misconstrued by the defense in that it's being left for collection by a garbage collector. Because not everyone has a garbage collector, and you can still put it out on a sidewalk. But they do have a garbage collector here. And where is the garbage usually collected? In front of the house. How far away? It would be around the front yard, 55 yards away. And where was the garbage can in this case when it was searched? It was adjacent to a public sidewalk, partially on the public sidewalk, partially on a grassy area. That's what adjacent to the sidewalk means to you? Partially on the sidewalk? Well, the district court stated the trash can was located immediately adjacent to the sidewalk with a portion of the trash can protruding onto the sidewalk. And that's adjoined appendix 177. So the district court's finding was that the trash can was partially on the sidewalk and adjacent, depending on what portion of the trash can you were looking at. And where did the officers say the trash can was when they searched? Well, the officers were very specific. They said it was 7 to 10 yards from the back door of the sidewalk, partly on the sidewalk or right off the sidewalk. And they also took pictures, recreated the scene, and showed exactly where it was. So would that be directly behind Mr. Jackson's residence? Yes, Your Honor, it is. Because it's 10 yards back, but it's directly behind the residence. And I think that's what the officer was testified about, that when he said directly behind, he didn't mean directly behind the door. He meant directly behind the residence, you know, 10 yards back. But as I said earlier, well, let's address the factual findings first, Your Honor. There's no other witness out at 4 a.m. on May 26th other than Officers Verbina and Officer Fitzpatrick. The defense witnesses, I pinned them down specifically in the record on cross-examination, and every single one said that they were not there, they were asleep or, you know, don't know what happened out there. And to correct one thing, Your Honor, I don't think the district court ever made a finding that the officers were on the concrete patio or went on the curtilage for their collection efforts. I think they specifically testified that they were on the sidewalk. And then moving along, Your Honor, in reference to curtilage, if you look at the done factors, if you break all four of them down, which I'd like to point out the defense's brief never analyzed. It's a footnote dropped in their brief, but never went through the analysis. But the proximity of the area claimed to be curtilage of the home, the cans were 7 to 10 yards from the back past the patio area, which we typically consider the curtilage. Then the second is whether the area was included with an enclosure surrounding the home. There's no fences or other enclosures that separated that particular patio. The nature of the uses to which the area is put. We heard specific testimony from both the officers and the defense witnesses that the area behind the patio is common area, that it's not the defendant's property, that kids play, that birthday parties are held, where adults come and talk and hang out. Those are residences, people that live in that community that utilize that for birthday parties and come and talk, right? So it's residents or invited guests of residents that use that common area. Is there any evidence in the record otherwise? Well, they talk about a footpath and a walkway, a cut that was used that was parallel or perpendicular to the sidewalk that went by the common area courtyard. Used by the residents. Used by residents. In some cases, they said they didn't know who these individuals were. I doubt in a place like Wickham Court that these Ms. Cox or any of the defense witnesses knew every single person that walked by as a resident of Wickham Court. Just because they don't know them doesn't mean they're not residents. There's nothing in the record that indicates anybody other than residents or invited guests of residents used the common area or that footpath, is there? Well, I think the officers talk about, you know, that they make trespassing arrests in that area. They're there to enforce trespassing. Because there are no trespassing signs surrounding the area. Is that right? But even if there's not one stranger that ever went past that area, the fact that there's 16 units in that small of area with that many people around, it seems very difficult to say that it wasn't publicly accessible. Now, publicly accessible, does that mean the general public, non-residents of Wickham Court? I don't think so, Your Honor. I would argue that it means tenants, invited guests, anyone that's in that back area could access that trash can. You know, if you look at just implied license or custom, if a kid had a gum wrapper, he most certainly would have felt he could throw that wrapper in that trash can located where the district court found it. I think it would be very difficult to say that he couldn't go in there and grab something out of that trash can, just under implied custom. Trash is different. If there was a footlocker or a suitcase that was back in that common area, I think definitely a warrant would be required. But this is a trash can. And social custom dictates that trash is different, that people are abandoning it. Just like Ms. Cox said, she was discarding and relinquishing these items, didn't use it for clothing storage, didn't put valuable items there. If the owner of the trash can and the owner of the residence states that she was getting rid of this stuff, how does an overnight guest like Mr. Jackson claim an expectation of privacy, either subjective or that society would accept as objectively reasonable? And that's the standard, regardless of the Leffert Collection or all these other issues that have come out through other courts. The main issue and the main test is the Greenwood Test. And that talks about the defendant's subjective expectation of privacy and what society would accept as reasonable. And just another point on the Leffert Collection. Leffert Collection seems to be a very subjective understanding. A defendant could claim that, oh, I didn't leave the item for collection, even though it's outside the cartilage. The only way we can assess whether trash is Leffert Collection is whether it's accessible, the location it's being put out, the manner it's being put out. So just to say, you know, if that was the standard, then any defendant could say, well, it wasn't Leffert Collection. I didn't mean it to be a Leffert Collection. Plus, how would an officer ever know it was being Leffert Collection? Different cities, different jurisdictions, different locations pick up their trash in different manners. So the only thing we can look at are the objective facts as to where the location of the trash can was. Which was directly behind his residence. So if I leave my trash can directly or someone leaves their trash can directly outside their garage door, directly behind the residence, does a police officer come up there and search it? No, but that's not what we have in this case, Your Honor. The district court's factual findings was 10 yards away on a public sidewalk. If this can was up against the back. It's adjacent to the sidewalk, right? Well, the district court specifically found that it was a portion of the trash can protruding on the sidewalk. And the remaining portion of the can was sitting on a 2 or 3 foot wide strip of grass between the patio and the residence. So with that, Your Honor, I would say it's on the sidewalk. And is that what the officer said in their report? The officer did an affidavit and put directly behind. But we're not challenging the affidavit in this case, Your Honor. Did the ATF do a report of investigation right after the search? There's no evidence in the record of that, Your Honor. What about at exhibit page 17, ATF report of investigation? 17? It's in Joint Appendix 2. It says the trash can for this residence was located directly behind the residence. Oh, I see. I'm sorry, Your Honor. Well, Agent Williams is not on the scene. He had nothing to do with this case other than adopt it as a federal ATF agent. Officers Verbena and Officer Fitzpatrick were the officers that conducted the trash pull, not Agent Williams. So he got this information from Officer Verbena? Or the affidavit, it's more likely, Your Honor, which says directly behind the residence. But as I said earlier, directly behind the residence has two meanings. Right. And since it does, and that's pretty important to this case, exactly where the trash can was, whether it was on the sidewalk or on the patio or chained to the laundry pole, that would be an important fact for the officer to put in his affidavit, wouldn't it? Well, I think it would be, Your Honor, but that's not challenged here. The defense had a chance to challenge the affidavit. They withdrew that. I think that was what the original part of the original motion to suppress involved, was a Frank's type setting in the Tate case circumstances. The defense did not move forward on that on appeal. That's not an issue before this court. The sole issue involves the expectation of privacy of this trash. And I believe at this stage they forfeited that, Your Honor. Any type of challenge or misleading or omission of facts in the affidavit is not before this court to handle. So based on my argument, Your Honor, we'd ask you to affirm unless there's any other questions. All right. Thank you. Mr. White. The government talks about a child who may walk by the residence, walk in the rear of the residence, go by that trash can and maybe throw a gum wrapper in the trash can. Well, the problem with that analogy is if that person were to toss a gum wrapper into that trash can, they would have to walk onto the patio of the residence to open up that trash can and put the wrapper in. And there were no findings by the district court as to where the officers were when this search was conducted. There is a statement in the district court's memorandum opinion that says the officers testified they were on the sidewalk. Joint Appendix 84, the officers testified they were on the grassy area. So that statement in the memorandum opinion was in error. So there needs to be a finding by the court where the officers conducted the search. Now, in talking about the affidavit, the reason we would reference the affidavit, the reason we referenced the affidavit at the hearing was because there was no reference. The court therefore finds that the trash can was situated outside of the curtilage of the residence. Oh, absolutely, Judge. And that's my exact point. Where the trash can was was clearly found adjacent. It also talks about the trash pool occurring there. Yes, but not where the officers were. I mean, we're talking about a very small area there. You know, maybe a two or three feet grassy area, a sidewalk, and then the patio is right there. I understand, but if you accept the court's conclusion, you don't have to accept it and it can challenge a factual finding. But if you accept the conclusion that the curtilage of the leasehold ended with the patio, the patio is part of the leasehold and the sidewalk is part of the public area, the court found that the trash can was in the public area. And it said the trash pool was there, too. And it described the public area as being partially on the sidewalk, partially on the grass. And it seems to me, if we draw a line at a curtilage and you accept that court's finding, then we have to start with the proposition that the trash was outside the curtilage where the court found it. Now, if we challenge that and say the court didn't have substantial evidence to make that finding, then we have to go back and look at what the officers testified and their photographs as to what they showed. But the photograph seems to show that it was where the court found it. Well, this wasn't a photograph taken at the time of the search. No, it was reconstructed. This was a recreation six months later. Yeah, but the officers went back and took photographs in order to give their testimony to the court as to what they saw that night. And clearly that testimony was favorable to the government, and it was presented in a way. Of course it was, but the court made that factual finding. Now the task, we have one of two things to do, but we can't blur the two. We either challenge the findings and then look at the evidence and see whether the court could have found it. But if we accept the findings, then we have the question of the argument you were trying to make as to whether you can have a trash pull outside of the curtilage. I disagree to this extent, Judge, that the findings of where the curtilage lie is a question of law, and you don't need to interrupt the factual findings of the district court in order to change that decision. Except the court said whether an area falls in the home's curtilage depends on four-factor assessment, and he made findings with respect to each. This is the areas that are used and how they're used and whether they're fenced and all this type of stuff. The court made findings on that and then drew the conclusion. Now, if that's what you're challenging, I didn't gather that's what you're challenging, but if you're challenging where the court defined the curtilage, then we ought to address that. But it looks to me as there are quite a few facts to support what the court said. And perhaps there needs to be more briefing on this. Perhaps there needs to be more findings on this because of the Jardines case. Well, that was a specific finding of the court. The court's opinion turned on it, and you didn't brief that at all. Well, and one of the reasons- If you want to challenge it, you've got to put it in your brief. Well, I think under the reasonable expectation of privacy test, the findings of whether it's curtilage, the district court found that even if this were on the curtilage, it's not necessarily dispositive of the case. Well, that was a footnote in citing a Seventh Circuit opinion, which came out before Jardines. Exactly, Judge, and that's my point. But that's not what the court found. The court said satisfied that the trash can was located outside the curtilage of the residence at the time of the trash pull. Right. The court next turns to the subjective expectation. And the Jardines case makes the finding of curtilage so much more important because- It is, and I'm suggesting you can make your argument at any point you wish, but I just don't think it's fair to jump from one to the other. In other words, if we're going to challenge whether the court properly defined the curtilage and made factual findings to support that, the court made factual findings as to why it defined the curtilage there. Yes. We can do that. We can address that. But I didn't take your position to be a challenge of that. Well, and I had 350 words in my 28J letter in order to address that issue, and I tried to put as much in there as I could in light of the Jardines case. So my point is this, Judge, whether this was Whitcomb Court or Wyndham, when you have a trash can that's 20 feet from the rear door of the residence- See, that's irrelevant. It's irrelevant. You've got to- 20 feet is not the measurement. The question is where was the trash can in relation to the privacy interests of the defendant? And it's outside the curtilage. That's the factual finding. So let's start and eliminate the 20 feet. If the curtilage ended at 10 feet or 19 feet, it doesn't matter. It's outside the curtilage where the pool was. But under Jardines, it's where the police officers were when they conducted the search. And if they stepped foot onto the curtilage- The court didn't find that. The court said the trash pool was of the trash can outside. The court didn't find otherwise. The court made no findings as to where the police officers were. Are you satisfied that the trash can was located outside the curtilage of the residence at the time of the trash pool? I completely agree, Judge, but that's where the trash can was and not the officers. Well, now you're arguing facts that I just don't have any record to support one way or the other, right? And that's why I think there needs to be further fact-finding made in this case. And this case potentially could be sent back to the district court for that fact-finding. Okay. Thank you. Thank you. Okay, we'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker